**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| WALTER BENNETT, JR., on behalf of himself and all others similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-115-RWS |
| ADVANCED CABLE CONTRACTORS, INC., a Georgia Corporation; AMERICAN CABLE, INC., a Georgia Corporation; and LISA ADCOX MEYER, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

This case comes before the Court on Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [22], Plaintiff's Motion for Conference Pursuant to Federal Rule of Civil Procedure 16 [25], Defendants' Motion for Sanctions and for Limitations on Opposing Counsel's Pre-Certification Communications [39], Plaintiff's Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members [41], Defendants' Motion to File a Surreply to Plaintiff's Second

Motion to Toll the Statute of Limitations as to Putative "Opt-in" Plaintiffs [45], and, finally, Plaintiff's Consent Motion to Dismiss with Prejudice Defendant American Cable, Inc. as a Defendant [67].  After reviewing the Record, the Court enters the following Order.

## Background

On January 12, 2012, Plaintiff filed this putative collective action under The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., seeking recovery of unpaid overtime compensation, liquidated damages, attorneys' fees and costs.  (Am. Compl., Dkt. [7] ¶ 1.)  Plaintiff and the members of the putative class he represents are current or former "Cable Technicians"[1] employed by Defendants in Georgia, who allegedly received "piece-rate" compensation without any overtime premium for hours worked in excess of forty hours in given work weeks.  (Id. ¶ 20.)  Plaintiff claims that Defendants willfully violated the FLSA by deliberately failing to pay Cable Technicians overtime compensation for hours worked in excess of forty hours a week.  (Id. ¶¶ 20, 23-25, 29-34.)

---

[1] Plaintiff uses the terms "Cable Technician" and "Cable Installer" interchangeably.  (Pl.'s Mot. for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members, Dkt. [41] at 2 n.1.)

2

**Discussion**

I.    **Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [22]** and **Defendants' Motion to File a Surreply to Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [45]**

    A.    <u>Defendants' Motion to File a Surreply to Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [45]</u>

Defendants seek to file a surreply to Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs to respond to new allegations raised in Plaintiff's reply brief regarding Defendants and their counsel.  (Dkt. [45] at 1-2.)  In particular, Defendants seek to respond to new allegations that Defendants' counsel has engaged in misconduct designed to deter putative class members from opting in to the suit.  (<u>See</u> Pl.'s Reply in Supp. of Second Mot. to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs ("Pl.'s Reply"), Dkt. [42] at 7-13 (containing new allegations of misconduct on the part of Defendants' counsel).)

Although neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies, the Court may, in its discretion, permit the filing of a surreply when a valid reason exists, "such as where the

3

movant makes new arguments in its reply brief." <u>Frederick v. Mercedes Benz USA, LLC</u>, 386 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).  In this case, Plaintiff makes new allegations and arguments in his Reply regarding the conduct of Defendants' counsel.  This weighs in favor of allowing Defendants to file a surreply.  The Court also notes that Plaintiff does not oppose Defendants' motion to file a surreply, having failed to file any response thereto.  <u>See</u> LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.")  Accordingly, because Defendants' motion is unopposed, and because the proposed surreply seeks to respond to new arguments raised in Plaintiff's Reply, Defendants' Motion to File a Surreply to Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [45] is **GRANTED**.

> B.   <u>Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs ("Pl.'s Second Mot. to Toll the Statute of Limitations") [22]</u>

Plaintiff moves the Court to toll the running of the statute of limitations as to the claims of putative "opt-in" Plaintiffs as of January 12, 2012, the date Plaintiff filed the original Complaint in this case.  Plaintiff argues that tolling is warranted in this case on three grounds:  First, Plaintiff contends that the filing

4

of a collective action complaint under the FLSA automatically tolls the statute of limitations as to putative members of the plaintiff class.  (Pl.'s Mem. in Supp. of Second Mot. to Toll the Statute of Limitations ("Pl.'s Mem."), Dkt. [22-1] at 11-12.)  Second, Plaintiff contends that even if the statute of limitations is not automatically tolled upon the filing of an FLSA collective action complaint, tolling is warranted in this case on grounds of equitable estoppel or equitable tolling.  (Id. at 12-20.)  The Court considers these contentions, in turn.

*1.*     *Statute of Limitations under the FLSA*

Contrary to Plaintiff's argument, the Court concludes that the statute of limitations is not automatically tolled as to the claims of putative opt-in plaintiffs upon the filing of an FLSA collective action complaint.  Indeed, this argument is foreclosed by the plain language of the FLSA.  The statute of limitations for actions brought under the FLSA is two years, or three years for willful violations.  See 29 U.S.C. § 255 (providing that FLSA action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action

5

accrued").  The FLSA provides that a collective action "shall be considered to

be commenced in the case of any individual claimant–

> (a) on the date when the complaint is filed, if he is specifically
> named as a party plaintiff in the complaint and his written consent
> to become a party plaintiff is filed on such date in the court in
> which the action is brought; or

> (b) if such written consent was not so filed or if his name did not
> so appear–on the subsequent date on which such written consent is
> filed in the court in which the action was commenced."

29 U.S.C. § 256.  Under the plain language of this provision, "opt-in plaintiffs

are deemed to commence their civil action only when they file their written

consent to opt into the class action."  Grayson v. K Mart Corp., 79 F.3d 1086,

1106 (11th Cir. 1996).  Thus, an opt-in plaintiff "must file his written consent to

opt into the class action prior to the expiration of the statute of limitations on his

[FLSA] claim."  Id. at 1107.  As other courts likewise have noted, the Court

finds the statute of limitations under the FLSA to be "clear and unambiguous."

Pendlebury v. Starbucks Coffee Co., No. 04-80521-CIV, 2008 WL 700174, at

*2 (S.D. Ga. Mar. 13, 2008).

Under the plain language of § 256 of the FLSA, the statute of limitations

is tolled as to the claims of a putative opt-in plaintiff only when the plaintiff has

6

opted-in to the suit by filing a written notice of consent.  Indeed, the Eleventh

Circuit has explained that the FLSA statute of limitations evinces Congress's

"concern that an opt-in plaintiff should not be able to escape the statute of

limitations bearing on his cause of action by claiming that the limitations period

was tolled by the filing of the original complaint."  Grayson, 79 F.3d at 1107

(citation omitted).  See also Ramos-Barrientos v. Bland, No. 606CV089, 2009

WL 3851624, at *3 (S.D. Ga. Nov. 17, 2009) ("Plaintiffs contend that the

statute of limitations was tolled for all 'similarly situated' [putative plaintiffs]

once the five named plaintiffs filed this suit.  This contention is simply

incorrect.  Under § 216(b), only written consent to opt-in will toll the statute of

limitations of an opt-in plaintiff's cause of action.") (internal quotation marks

and citations omitted).

    Plaintiff relies on Armstrong v. Martin Marietta Corp., 138 F.3d 1374

(11th Cir. 1998) in support of his argument that the filing of the complaint

automatically tolls the statute of limitations as to the claims of putative opt-in

plaintiffs.  This case, however, is inapposite.  Plaintiff cites Armstrong as

"stand[ing] for the proposition that the statute of limitations in FLSA collective

actions, like ADEA collective actions, is legally tolled upon the filing of the

7

Complaint."  (Pl.'s Mem., Dkt. [22-1] at 12.)  In Armstrong, however, as

Defendants correctly point out, the statute of limitations was tolled upon the

filing of the plaintiffs' Age Discrimination in Employment Act (ADEA)[2]

complaint as to the claims of plaintiffs *who had opted in to the plaintiff class*.

138 F.3d at 1379-80.  Armstrong thus lends no support to Plaintiff's position in

this case.[3]

Having concluded that the filing of the complaint does not automatically

toll the statute of limitations as to the claims of putative opt-in plaintiffs under

the FLSA, the Court must next consider whether the circumstances of this case

nonetheless warrant tolling on grounds of equity.  Plaintiff contends that, in

light of the specific facts of this case, Defendants should be estopped from

asserting the statute of limitations as to putative opt-in Plaintiffs or that the

---

[2] The ADEA "expressly borrows the opt-in class action mechanism of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) (1994)."  Armstrong, 138 F.3d at 1379 n.6.

[3] Indeed, the Court in Armstrong considered a different issue than the one before the Court.  The issue in Armstrong was whether a statute of limitations that had been tolled while the claimants were putative members of a class action immediately resumed upon denial of class certification or remained tolled through final judgment and completion of an appeal.  138 F.3d at 1378.  (The Court concluded that it recommenced immediately upon entry of an interlocutory order denying class certification.  Id. at 1380.)

doctrine of equitable tolling should apply.  The Court considers these

contentions, in turn.

> ### 2.      *Equitable Estoppel*

The Court concludes that Plaintiff has failed to show circumstances

warranting equitable estoppel in this case.  "The doctrine of equitable estoppel

'has frequently been employed to bar inequitable reliance on statutes of

limitations.'"  Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1323 (11th

Cir. 1989) (quoting Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 233

(1959)).  It is rooted in the maxim "'that no man may take advantage of his own

wrong,'" id. (quoting Glus, 359 U.S. at 232), and "prevents a defendant whose

representations or other conduct have caused a plaintiff to delay filing suit until

after the running of the statutory period from asserting that bar to the action,"

Sanchez v. Loffland Bros. Co. et al., 626 F.2d 1228, 1231 (5th Cir. 1980).[4]

To successfully avoid the statute of limitations on grounds of equitable

estoppel, "the late arriving plaintiff must show that she was misled by defendant

or its agents so that she delayed filing suit" because of any of the following:

---

[4] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding
precedent all decisions of the former Fifth Circuit handed down before October 1,
1981.  661 F.2d 1206, 1209 (11th Cir. 1981).

AO 72A
(Rev.8/82)

> (a) an affirmative statement that the statutory period to bring the action was longer than it actually was[;] or
>
> (b) promises to make a better settlement of the claim if plaintiff did not bring suit[;] or
>
> (c) comparable representations and conduct.

Id. at 1323-24 (citations omitted).  "The plaintiff need not prove bad faith, but the conduct must be directed towards obtaining the delay in bringing suit, and must be motivated by a desire to lull the plaintiff into not bringing a lawsuit." Barton v. Peterson, 733 F. Supp. 1482, 1491 (N.D. Ga. 1990) (citing Kazanzas v. Walt Disney World Co., 704 F.2d 1527, 1530 (11th Cir. 1983)).  Thus, the nature of the defendant's conduct is of crucial significance in determining whether an equitable estoppel is justified.  Sanchez, 626 F.2d at 1231.  "[I]n order to create an estoppel, the conduct of the defendant must be so misleading as to cause the plaintiff's failure to file suit."  Id.

In accordance with the foregoing principles, the doctrine of equitable estoppel successfully has been invoked where the defendant misrepresented to the plaintiff's counsel that the plaintiff's claim had been fully paid and a release of liability executed in its favor, causing plaintiff's counsel to delay filing suit. Keefe, 867 F.3d at 1323-24.  Similarly, the doctrine has been found to apply

where the defendant actively misrepresented to the plaintiff that he had seven years in which to sue, thus inducing the plaintiff's delay in filing suit beyond the three year statute of limitations governing his claims.  Glus, 359 U.S. at 231-35.  The doctrine also has been held to apply "in cases where the defendant promised to pay the claim or to settle if the plaintiff did not file suit."  Sanchez, 626 F.2d at 1231 (citing cases).  Finally, the doctrine successfully has been invoked in cases where the defendant actively concealed the facts giving rise to the plaintiff's cause of action.  For example, a defendant who misrepresented to a plaintiff the grounds for her termination, thus concealing from her the facts that gave rise to her discrimination claim, was equitably estopped from asserting the statute of limitations.  Reeb v. Econ. Opportunity Atlanta, Inc., 516 F.2d 924, 930-31 (5th Cir. 1975).

By contrast, equitable estoppel has been held not to apply in cases where there is no evidence of misleading conduct on the part of the defendant that prevented the plaintiff from timely filing suit.  For example, in Burke v. Gateway Clipper, Inc., equitable estoppel did not apply when the defendant's agents told the plaintiff, who had been injured during the course of his employment, "that [he] had nothing else coming to [him] other than [his] doctor

11

and hospital bills and to apply for unemployment . . . ."  441 F.2d 946, 948-49

(3d Cir. 1971).  The court reasoned that such statements were not of the type

that would mislead a plaintiff into delaying filing suit.  Id. at 949.  Similarly, the

court in Sanchez found the doctrine inapplicable where the defendants "made

no affirmative misstatements regarding [the plaintiff's] legal rights" and "did

not promise any benefit to her if she refrained from filing suit."  626 F.2d at

1231.  As a final example, the Eleventh Circuit in Kazanzas held that equitable

estoppel did not apply where the plaintiff, at the time of his discharge from

employment, "was generally aware of a right not to be discriminated against on

the basis of age and of facts which would reasonably lead the plaintiff to

conclude that his discharge was based on age."[5]  704 F.2d at 1530.

       The Court concludes that the doctrine of equitable estoppel is not

warranted on the facts of this case.  Specifically, the Court finds that Plaintiff

has failed to put forward sufficient evidence of wrongdoing on the part of

_____

       [5] The court also rejected the plaintiff's argument that an estoppel was
warranted because the defendant had "held out hopes of reemployment": "This case
lacks the crucial elements of fraud or misrepresentations . . . .  The[] good faith efforts
by [the defendant to reemploy the plaintiff] cannot serve to estop it from asserting the
statute of limitations. . . .  [T]here was no misrepresentation by the defendant of its
intent to rehire or otherwise accomodate the plaintiff's claim."  Kazanzas, 704 F.2d at
1532.

12

Defendants that was intended to, and did, lull putative plaintiffs into failing to opt in timely to the suit.  The Court reaches this conclusion notwithstanding Plaintiff's arguments to contrary.

Plaintiff first argues that equitable estoppel should apply in this case because Defendants ignored Cable Technicians' complaints regarding their lack of overtime compensation and/or misrepresented to them that they were not eligible to receive such compensation given that they were paid according to a "piece-rate" system.  (Pl.'s Mem., Dkt. [22-1] at 15-16.)  For example, Plaintiff points to the Declaration of opt-in Plaintiff Patrick Thompson, in which Thompson states, "On multiple occasions throughout my employment with Advanced Cable . . ., I informed Lisa Adcox Meyer and Advanced Cable management staff that [Cable Technicians] should be receiving overtime compensation for work . . . performed in excess of 40 hours in given work weeks."  (Decl. of Patrick Thompson, Dkt. [22-4] ¶ 5.)  Thompson declares further, "In response to my complaints about unpaid overtime, Lisa Adcox Meyer stated 'I know I'm supposed to pay you guys overtime, but if I did I'd have to reduce your rate.'"  (Id. ¶ 6.)

13

Opt-in Plaintiffs Derek Moore and Raymond Canty offer similar declarations.  Moore declares, "In 2010 and 2011, I made multiple complaints to Advanced Cable management, including manager Greg Parker, regarding the fact that I was not receiving overtime compensation . . . ."  (Decl. of Derek Moore, Dkt. [22-5] ¶ 5.)  Moore alleges that in response to these complaints, Mr. Parker told him to "'work more' if you want to make more money," and that "'you guys are paid piece rate compensation and you don't get overtime.'" (Id. ¶¶ 6-7.)  (See also Decl. of Raymond Canty, Dkt. [22-6] ¶¶ 5-6 ("I made multiple complaints to Advanced Cable's management . . . regarding the fact that I was not receiving overtime compensation . . . .  In response to my complaints to management about overtime, I was told that I was paid 'piece rate' compensation, and that I would be paid less if I was given overtime.").)

These declarations, even if true,[6] do not support an equitable estoppel.  Rather than demonstrate that Defendants misled potential opt-in Plaintiffs as to their potential rights to overtime compensation, the declarations show that

---

[6] The Court notes that Defendants dispute the truth of the declarants' assertions. (Defs.' Resp. to Pl.'s Second Mot. to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs, Dkt. [40] at 15-16, 20-21; Decl. of Greg Parker, Dkt. [40-1]; Decl. of Adrienne Cachussie, Dkt. [40-2].)

potential opt-in Plaintiffs were aware of their rights to overtime (or believed

such rights existed) and regularly complained that these rights were being

violated.  Even if Defendants denied that Cable Technicians were entitled to

overtime compensation, Plaintiff puts forward no evidence that putative

plaintiffs were misled into believing this to be true.  Indeed, the declarations

plainly suggest otherwise–that Cable Installers believed they had a right to be

paid for overtime work despite their "piece-rate" compensation.

     Plaintiff also argues that an estoppel is warranted in this case because

Advanced Cable management allegedly instructed opt-in Plaintiff Monty

Dannenberg "to unlawfully make downward modifications to employees'

reported work hours."  (Pl.'s Mem., Dkt. [22-1] at 16.)  Dannenberg declares

that he was instructed by an Advanced Cable manager to change Cable

Installers' time sheets to show fewer working hours than actually reported.

(Decl. of Monty Dannenberg, Dkt. [22-3] ¶¶ 6, 9-12.)  Dannenberg further

declares that "[he] told management that [he] believed it was wrong to change

'Cable Installers' [sic] reported hours," and that management directed him in

response to "'just follow the directive and change the records.'"  (Id. ¶ 13.)

15

These allegations, if true, could support a finding that Defendants willfully violated the FLSA for purposes of the statute of limitations. The allegations do not support an estoppel, however, because they do not suggest that any putative plaintiff was misled by Defendants into not opting in to the suit in a timely fashion. On the contrary, Dannenberg declares that he believed what he was instructed to do was wrong and that he voiced this sentiment to Advanced Cable management. Furthermore, Plaintiff puts forward no evidence that as a result of the alleged downward modification of working hours, any putative plaintiff was misled into believing that he or she did not work enough hours to be entitled to overtime compensation, and therefore misled as to his or her right to opt in to the suit.

In sum, Plaintiff has failed to show any evidence of conduct on the part of Defendants that was so misleading as to cause potential opt-in Plaintiffs to fail to opt in to the suit in a timely manner. As such, an equitable estoppel is not warranted in this case.

### 3.   *Equitable Tolling*

The Court similarly concludes that equitable tolling is not warranted. "Time requirements in lawsuits between private litigants are customarily

16

subject to 'equitable tolling,'" Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990), which doctrine "abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust," Justice v. United States, 6 F.3d 1474, 1475 (11th Cir. 1993). Equitable tolling, however, is an "extraordinary remedy which should be extended only sparingly." Id. at 1479. Courts will toll statutes of limitations "only upon finding an inequitable event that prevented plaintiff's timely action." Id. (internal quotation marks and citation omitted). Unlike equitable estoppel, which "require[s] an allegation of misconduct on the part of the party against whom it is made," "equitable tolling does not require any misconduct on the part of the defendant," though misconduct on the part of the defendant may warrant it. Browning v. AT&T Paradyne, 120 F.3d 222, 226 (11th Cir. 1997) (citation omitted).

The doctrine of equitable tolling successfully has been invoked in cases "when the defendant misleads [the plaintiff] into allowing the statutory period to elapse," "when [the plaintiff] has no reasonable way of discovering the wrong perpetrated against her," or "when [the plaintiff] timely files a technically defective pleading and in all other respects acts with the proper

17

diligence . . . which . . . statutes of limitation were intended to insure." <u>Justice</u>,
6 F.3d at 1479 (internal quotation marks and citations omitted).  The doctrine
also has been applied in cases "when a plaintiff's complaint was untimely as a
result of confusing communications from the EEOC," "where the court led the
plaintiff to believe that she had done all that was required of her," or "where a
motion for appointment of counsel was pending." <u>Browning</u>, 120 F.3d at 227
(citations omitted).  The aforementioned authority suggests, as other courts
have found, that equitable tolling "does not apply unless a plaintiff is
reasonably induced to delay the filing of a claim." <u>In re Tyson Foods, Inc.</u>, No.
4:07-MD-1854 (CDL), 2008 WL 4613654, at *3 (M.D. Ga. Oct. 15, 2008).  <u>See</u>
<u>also</u> <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1435 (11th Cir. 1998)
("We also reject the application of equitable tolling to this case.  ADEA's
timing requirements might have been equitably tolled, if, in the period prior to
the 180 days before filing the initial EEOC charge, [the plaintiff] had no reason
to believe he was a victim of unlawful discrimination. . . .  The evidence,
however, indicates that [the plaintiff], during his [employment], protested
vigorously against his failure to receive the same training opportunities offered
to his younger co-workers."); <u>McClinton v. Ala. By-Products Corp.</u>, 743 F.2d

1483, 1487 (11th Cir. 1984) (holding equitable tolling not warranted when "an employee suspects that he may have been discriminated against on account of age and is also generally aware of his legal right to obtain redress for that wrong").

For the same reasons the Court finds equitable estoppel to be inapplicable in this case, the Court finds that equitable tolling is unwarranted. Plaintiff has failed to point to any inequitable event that prevented putative plaintiffs from timely opting in to this suit such that the operation of the statute of limitations would be unjust. On the contrary, Plaintiff presents evidence that several Plaintiffs who have already opted in to the suit frequently complained to Defendants that they were not being given the overtime compensation to which they believed they were entitled. Plaintiff contends that Defendants ignored these complaints or denied that Cable Installers were entitled to overtime; however, Plaintiff does not allege or put forward evidence to suggest that putative plaintiffs actually were misled as to their rights. Nor does Plaintiff point to any other inequitable circumstance that induced putative plaintiffs not to opt in to the suit. In the absence of such evidence, the Court cannot toll the statute of limitations.

In accordance with the foregoing, the Court finds that tolling of the statute of limitations as to the claims of putative opt-in Plaintiffs is not warranted on the facts of this case.  Accordingly, the Court **DENIES** Plaintiff's Second Motion to Toll the Statute of Limitations as to Putative "Opt-In" Plaintiffs [22].

## II.   Plaintiff's Motion for Conference Pursuant to Federal Rule of Civil Procedure 16 [25]

In his Motion for Conference Pursuant to Federal Rule of Civil Procedure 16 ("Pl.'s Mot. for Conference") [25], Plaintiff requests that the Court hold a conference pursuant to Federal Rule 16 and Rule 16.1 of the Local Rules of this Court.  Plaintiff requests the conference for two reasons:  First, Plaintiff contends that a conference is needed to give the parties guidance on the extent to which Plaintiff's counsel may contact potential opt-in Plaintiffs prior to conditional collective action certification.  (Pl.'s Mot. for Conference, Dkt. [25] at 5-8.)  Second, Plaintiff requests a conference to address several "threshold and discovery issues," namely, (1) briefing schedules for Plaintiff's motions to toll the statute of limitations and for conditional collective action certification,

20

and (2) the scope of discovery Plaintiff is entitled to undertake regarding opt-in and putative Plaintiffs prior to conditional certification.  (Id. at 9-11.)

Defendants, on the other hand, argue that a conference with the Court is unnecessary.  (See generally Defs.' Resp. to Pl.'s Mot. for Conference, Dkt. [38].)  Defendants first point out that while Plaintiff requests a conference pursuant to both Federal Rule of Civil Procedure 16 and Local Rule 16.1, the two rules govern two different types of conferences.  (Id. at 1-2.)  Indeed, as Defendants point out, Federal Rule 16 governs pretrial conferences and provides that the Court may order counsel to appear at a pretrial conference for such purposes as "expediting disposition of the action," "establishing early and continuing control so that the case will not be protracted because of lack of management," and "discouraging wasteful pretrial activities."  Fed. R. Civ. P. 16(a).  Local Rule 16.1, on the other hand, governs Federal Rule 26(f) conferences[7] and requires counsel for all parties to "confer in person in an effort to settle the case" and to discuss discovery and other issues.  LR 16.1, NDGa. As the two rules govern different conferences, Defendants contend that

---

[7] Rule 26(f) provides that, except in certain cases, "the parties must confer as soon as practicable–and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)."  Fed. R. Civ. P. 26(f).

AO 72A
(Rev.8/82)

Plaintiff's request for a conference is ambiguous.  (Defs.' Resp. to Pl.'s Mot. for Conference, Dkt. [38] at 2.)

Defendants argue that a conference with the Court, pursuant to Federal Rule 16, is unnecessary and that a Rule 26(f) conference, pursuant to Local Rule 16.1, is sufficient to resolve the issues raised in Plaintiff's motion.  (Id. at 2-3.)  Defendants argue that the text of Local Rule 16.1 plainly contemplates that the parties will discuss discovery issues at a Rule 26(f) conference, without Court involvement.  (Id. at 2.)  Defendants also point out that the parties may request any scheduling conferences that may be needed following the Rule 26(f) conference in the Joint Preliminary Report and Discovery Plan.  (Id. (citing LR App'x B, Joint Preliminary Report and Discovery Plan ¶ 9).)  Thus, Defendants argue, there is no need for a Federal Rule 16 conference with the Court at this time.  (Id. at 3.)

The Court concludes that a conference with the Court is unnecessary at this time given that the issues raised in Plaintiff's motion have become moot as a result of the Court's rulings in this Order.  In particular, because the Court has granted Plaintiff's motion for conditional certification and issuance of notice to putative class members (see Part IV, infra), the extent to which Plaintiff's

22

counsel may contact putative opt-in Plaintiffs prior to conditional certification

is a moot issue.  Similarly, the scope of permissible pre-conditional certification

discovery is no longer an issue.  Finally, Plaintiff's motion to toll the statute of

limitations and motion for conditional certification have been fully briefed and

ruled on by the Court in this Order; as such, a conference is not needed to

determine briefing schedules for those motions.  In sum, because each issue

raised by Plaintiff in support of his motion for conference has been resolved, a

conference is not necessary.  Accordingly, the Court hereby **DENIES** Plaintiff's

Motion for Conference Pursuant to Federal Rule of Civil Procedure 16 [25].

**III.    Defendants' Motion for Sanctions and for Limitations on Opposing Counsel's Pre-Certification Communications [39]**

Pursuant to Rule 7.3(d) of the Georgia Rules of Professional Conduct

and Local Rule 83.1C,[8] Defendants move the Court to sanction Plaintiff's

counsel for contacting potential opt-in Plaintiffs and soliciting their

participation in this lawsuit, and to impose limitations on Plaintiff's counsel's

future pre-collective action certification communications with potential

---

[8] This rule provides, "All lawyers practicing before this court shall be governed by and shall comply with . . . the Georgia Rules of Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards."  LR 83.1(C), NDGa.

23

Plaintiffs.  (See generally Defs.' Mot. for Sanctions and for Limitations on

Opposing Counsel's Pre-Certification Communications ("Defs.' Mot."), Dkt.

[39].)  Rule 7.3(d) of the Georgia Rules of Professional Conduct provides, "A

lawyer shall not solicit professional employment as a private practitioner for the

lawyer, a partner or associate through direct personal contact or through live

telephone contact, with a non-lawyer who has not sought advice regarding

employment of a lawyer."  The Court first sets out the facts underlying

Defendants' motion before considering its merits.

     A.    Background Facts

     Defendants allege that on or about January 30, 2012, in violation of

Georgia Rule of Professional Conduct 7.3(d), at least one employee of The Katz

Law Group contacted the following Advanced Cable employees by phone to

solicit their participation in this suit: Matthew Meyers, Anthony Head, Cecil

Pacatti III, David "Larry" Gresham, and Joey Sterle.  (Mem. of Law in Supp. of

Defs.' Mot. ("Defs.' Mem. of Law"), Dkt. [39-1] at 2-6.)  On February 14,

2012, one of these employees, Mr. Sterle, opted in to the suit by filing a

Consent To Be A Party Plaintiff.  (Id. Ex. 1; Dkt. [34].)  Defendants request that

the Court sanction Plaintiff's counsel for these allegedly improper

communications.  Defendants also request that the Court place limitations on opposing counsel's future pre-collective action certification communications with putative opt-in Plaintiffs, arguing that the communications that have already occurred were false and misleading.  (Defs.' Mem. of Law, Dkt. [39-1] at 12-15.)

Plaintiff admits that on January 27, 2012, a non-attorney representative of Plaintiff, Rachel Katz, asked another non-attorney representative, Susie Gerchicoff, to contact putative opt-in Plaintiffs from a phone directory list of Advanced Cable employees provided by an opt-in Plaintiff.  (Pl.'s Resp. in Opp'n to Defs.' Mot. for Sanctions and for Limitations on Communications ("Pl.'s Resp. in Opp'n"), Dkt. [43] at 3.)  Plaintiff alleges that Ms. Katz was unaware of any ethical restrictions on communications with potential class members and did not consult with any of Plaintiff's attorneys regarding the content of communications that properly could be had with potential Plaintiffs. (Id.)  Plaintiff further alleges that of the fourteen Plaintiffs who have opted in to the suit, only two (Said Chambuso and Joseph Sterle) were contacted initially by The Katz Law Group.  (Id. at 4.)

On January 30, 2012, Defendants' counsel sent Plaintiff's counsel a letter demanding that counsel for Plaintiff cease all communications with putative opt-in Plaintiffs.  (Dkt. [43-9].)  Plaintiff's counsel responded on January 31, 2012, agreeing to cease communications with potential opt-in Plaintiffs until the Court could give the parties guidance on the extent to which such communications could be had.  (Dkt. [43-10].)  Shortly thereafter, on February 3, 2012, Plaintiff filed his motion for a Federal Rule 16 Conference, discussed in Part II, supra.  Plaintiff alleges that no further communications have been had between Plaintiff's counsel's office and putative opt-in Plaintiffs since Plaintiff's counsel agreed to cease all such communications.  (Pl.'s Resp. in Opp'n, Dkt. [43] at 5.)

B.    Analysis

Defendants first move the Court to sanction Plaintiff's counsel for violating Rule 7.3(d) of the Georgia Rules of Professional Conduct by contacting and soliciting employment from putative opt-in Plaintiffs.  (Defs. Mem. of Law, Dkt. [39-1] at 7-12.)  As stated above, Rule 7.3(d) prohibits lawyers from soliciting professional employment from nonlawyers, who have not sought advice regarding employment of a lawyer, through direct personal or

26

live telephone contact.  Georgia Rule of Professional Conduct 5.3 further

provides that lawyers are obligated to train nonlawyer employees regarding the

ethical obligations of lawyers and that, in certain circumstances, a lawyer may

be held liable for a violation of the Rules based on the conduct of a nonlawyer

employee.  It is well settled that district courts have the power to discipline

attorneys who appear before them for violating the rules of professional

conduct.  Hamm v. TBC Corp., 345 F. App'x 406, 410 (11th Cir. 2009) (citing

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).

      As explained in detail above, the alleged solicitation of clients in this case

occurred with respect to putative opt-in Plaintiffs in the pre-collective action

certification context.  The Supreme Court has explicitly recognized the potential

for abuse in this context.  In Gulf Oil Company v. Bernard, the United States

Supreme Court noted that although "class actions serve an important function in

our system of civil justice," they also present "opportunities for abuse," many

of which are "associated with communications to class members."  452 U.S. 89,

99-100 (1981).   These potential abuses include "heightened susceptibilities of

nonparty class members to solicitation amounting to barratry," "increased

opportunities of the parties and counsel to 'drum up' participation in the

proceedings," and "[u]napproved communications to class members that misrepresent the status or effect of the pending action." Id. at 101 n.12 (internal quotation marks and citations omitted). As the Supreme Court has recognized, the same potentials for abuse present in the class action context are present in collective actions. Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989).

In light of these potentials for abuse, "'a district court has both the duty and the broad authority to exercise control over a class [or collective] action and to enter appropriate orders governing the conduct of counsel and the parties.'" Id. at 171 (quoting Gulf Oil Co., 452 U.S. at 100 and applying reasoning of same to collective action); see also Maddox v. Knowledge Learning Corp., 499 F. Supp. 2d 1338, 1343 (N.D. Ga. 2007) ("[T]he court has broad authority to manage the collective action . . . .") (citation omitted). To this end, courts may prohibit false or misleading pre-notice communications with putative plaintiffs. Id. at 1342-43 (citing cases); Taylor v. CompUSA, Inc., No. CIVA 1:04-cv-718-WBH, 2004 WL 1660939, at *3 (N.D. Ga. June 29, 2004); Mevorah v. Wells Fargo Home Mortgage, Inc., et al., No. C-05-1175-MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Courts have limited pre-

28

certification communications with potential class members after misleading,

coercive, or improper communications were made.").  At the same time,

however, "[p]re-certification communications to potential class members by

both parties are generally permitted, and also considered to constitute

constitutionally protected speech." Mevorah, 2005 WL at *3.  Accordingly,

courts must be "mindful not to run afoul of plaintiffs' and their lawyers' free

speech rights in their restrictions of pre-notice communications." Maddox, 499

F. Supp. 2d at 1343.  Court-imposed restrictions on such communications

therefore must be based on "a clear record and specific findings that reflect a

weighing of the need for a limitation and the potential interference with the

rights of parties." Id. (internal quotation marks and citation omitted).

In light of the First Amendment protection generally afforded to pre-

collective action certification communications with putative opt-in plaintiffs,

the propriety of the communications at issue in this case is subject to debate.

Although it is troublesome to the Court that the communications took place via

live telephone contact, which is explicitly prohibited by Georgia Rule of

Professional Conduct 7.3(d), the Court notes, on the other hand, that upon

receiving the cease and desist letter from opposing counsel, Plaintiff's counsel

immediately ceased all contact with putative opt-in Plaintiffs and sought

guidance from the Court as to how to proceed.  These actions demonstrates a

lack of bad faith on the part of Plaintiff's counsel.  The absence of bad faith on

the part of Plaintiff's counsel, combined with the First Amendment protections

afforded to pre-notice speech, convinces the Court that sanctions are not

warranted in this case, even if permitted under the Rules of Professional

Conduct.

The Court further finds that Defendants' request for limitations on

opposing counsel's future pre-notice communications with putative opt-in

plaintiffs is moot in light of the Court's decision to grant Plaintiff's motion for

conditional class certification.  (See Part IV, infra (granting Plaintiff's Motion

for Conditional Collective Action Certification and Issuance of Notice to

Putative Class Members [41]).)  The notice approved by the Court in this Order

necessarily will govern Plaintiff's counsel's future communications with

putative opt-in Plaintiffs and restrict the content of those communications.

Additionally, to the extent any pre-notice communications between Plaintiff's

counsel's office and putative plaintiffs were false or misleading, as Defendants

30

contend, the Court-approved notice will correct any falsehoods or misstatements.

However, in an abundance of caution, the Court will require that the two Plaintiffs who opted in to this case after communications from The Katz Law Group (Said Chambuso and Joseph Sterle) file renewed Consent Forms to join the case. Plaintiff's counsel shall provide these Plaintiffs with the Notice authorized by this Order. If, after receiving that Notice, these Plaintiffs wish to remain in the case, they should sign and submit the Consent Form. The date on which they will be deemed to have joined the action for purposes of calculating the statute of limitations shall be the date they originally filed their Consents to be a Party Plaintiff.

In accordance with the foregoing, Defendants' Motion for Sanctions and for Limitations on Opposing Counsel's Pre-Notice Communications [39] is **DENIED**.

## IV.    Plaintiff's Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members [41]

Plaintiff moves the Court to conditionally certify this matter as a collective action under § 216(b) of the FLSA and to authorize notice to all

AO 72A
(Rev.8/82)

members of the proposed class.  The proposed class is to consist of "all 'Cable

Technicians' employed by Advanced Cable in Georgia at any time since

January 12, 2009."[9]  (Pl.'s Mem. in Supp. Mot. for Conditional Collective

Action Certification & Issuance of Notice to Putative Class Members ("Pl.'s

Mem."), Dkt. [41-1] at 3 of 23.)  The FLSA authorizes collective actions,

providing, in pertinent part:

> An action ... may be maintained against any employer ... by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated.  No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed with the
> court in which such action is brought.

29 U.S.C. § 216(b).  Under this provision, "a putative plaintiff must

affirmatively opt into a § 216(b) action by filing his written consent with the

court in order to be considered a class member and be bound by the outcome of

the action." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir.

2001).  The Court, in its discretion, may authorize the sending of notice to

potential class members of their right to opt in.  Dybach v. State of Fla. Dep't of

Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991).

---

[9] January 12, 2009 is the date of filing of the original Complaint.  (Dkt. [1].)

As is clear from the plain language of § 216(b), an opt-in class may be certified only where the named plaintiff sues on behalf of himself and other "similarly situated" employees. Id. at 1217 (citing 29 U.S.C. § 216(b)); Kreher v. City of Atlanta, No. 1:04-CV-2651, 2006 WL 739572, at *2 (N.D. Ga. Mar. 20, 2006). The Eleventh Circuit suggests a two-tiered approach to making class certification decisions under this provision:

> The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members. Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and an opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives–i.e. the original plaintiffs–proceed to trial on their individual claims.

33

Hipp, 252 F.3d at 1218 (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

This case is before the Court for the "first determination" of class certification.  In deciding whether to conditionally certify the proposed class, the Court must determine (1) whether the employees sought to be included in the putative class are "similarly situated" with respect to their job requirements and pay provisions, and (2) whether there are other employees who wish to opt in to the action.  Dybach, 942 F.2d at 1567-68.  The Court considers, in turn, these prerequisites to conditional class certification.

> A.    Similarity of employment positions and pay provisions of putative
>       class members.

Plaintiff bears the burden of showing, under § 216(b), that he is "similarly situated" to the members of the putative class he seeks to represent. Grayson, 79 F.3d at 1096.  As stated above, this burden is not a heavy one.  See also Grayson, 79 F.3d at 1095-96 ("[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 ( severance).").  To satisfy the "similarly situated" requirement, "plaintiffs need show only that their positions are similar, not

34

identical, to the positions held by the putative class members." Id. at 1096
(internal quotation marks and citation omitted).  Additionally, "plaintiffs bear
the burden of demonstrating a 'reasonable basis' for their claim of class-wide
discrimination."  Id.

In this case, Plaintiff alleges that he and the putative class members were
employed as Cable Technicians and thus held identical positions at Advanced
Cable in Georgia.  (Pl.'s Mem., Dkt. [41-1], passim.)  Plaintiff further alleges
that he and the proposed class members were "paid in the same manner, worked
very similar hours, performed the same principal job duties of cable and internet
service and installation appointments, and were subjected to the same unlawful
policy, i.e. Defendants' failure to pay 'Cable Installers' overtime wages for all
hours of 'piece-rate' work performed in excess of 40 hours in given work
weeks."  (Id. at 8 of 23).  In support of these allegations, Plaintiff offers his own
declaration as well as declarations of six other putative class members.  (Id. at
17 of 23.)  Each of the seven declarations provides that the declarant was
employed as a Cable Installer; that the declarant was paid "piece-rate"
compensation; that the declarant often worked in excess of forty (40) hours in a
given week; and that Defendants did not pay the declarant overtime for work

performed in excess of forty (40) hours in a given work week.  (See generally Decl. of Walter Bennett, Dkt. [41-3]; Decl. of Luther Lamont Deloach, Dkt. [41-4]; Decl. of Derek Moore, Dkt. [41-4]; Decl. of Monty Dannenberg, Dkt. [41-6]; Decl. of Patrick Thompson, Dkt. [41-7]; Decl. of Raymond Canty, Dkt. [41-8]; Decl. of Ivan Carroll, Dkt. [41-9].)  Two of the declarations further provide that the principal job duties of a Cable Installer "were to perform cable and internet installation and service appointments."  (Bennett Decl., Dkt. [41-3] at ¶ 3; Deloach Decl., Dkt. [41-4] at ¶ 3.)

Defendant contends that Plaintiff's declarations consist only of "vague" and cookie-cutter assertions," many of which "contain basic factual inaccuracies."  (Defs.' Resp. to Pl.'s Mot. for Conditional Collective Action Certification & Issuance of Notice to Putative Class Members ("Defs.' Resp."), Dkt. [44] at 3-5 of 14.)  For example, Defendants argue that contrary to the assertions of declarants Bennett and Deloach, Defendants' Cable Installers perform only equipment installations and do not service appointments.  (Id. at 5 of 14.)  Defendants thus contend that Plaintiff has proffered only "exceptionally weak evidentiary support" for its motion for conditional certification, which motion accordingly should be denied.  (Id.)

36

At the notice stage, however, the Court need not engage in credibility determinations; instead, the Court must determine only whether Plaintiff has presented sufficient–not factually correct–evidence that the putative class members and Plaintiff are "similarly situated."  See, e.g., Reyes v. AT&T Corp., 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("In keeping with the practical approach which shuns credibility battles at the first stage, in all but a handful of cases, where discovery has already occurred, the individual factual analysis is saved for the second stage of the certification.") (internal footnote, quotation marks, and citations omitted).  Under the lenient standard that applies at this stage, the Court finds that Plaintiff has presented sufficient evidence to show that he and the putative class members are "similarly situated."  In particular, the Court finds sufficient Plaintiff's allegations that he and the putative class members all (1) worked for Defendants in Georgia in the same job position, i.e., as Cable Technicians; (2) received "piece-rate" compensation; (3) regularly worked in excess of forty (40) hours per week; and (4) did not receive overtime compensation for such excess work performed.

B.     Sufficiency of interest by other employees in the lawsuit.

Although Plaintiff has demonstrated that he is similarly situated to the

37

other members of the putative class under the lenient standard appropriate at the

notice stage, he must also demonstrate that other employees wish to opt in

before the Court may grant conditional certification.  Dybach, 942 F.2d at 1567-

68.  Since the filing of Plaintiff's Complaint, fourteen other individuals have

filed consent forms to opt in to this action.  (See Notices of Consent Filings,

Dkt. [3, 6, 9, 11, 12, 14, 16, 17, 19, 26, 27, 32, 34, 37].)  At this stage of the

proceedings, the Court is satisfied that Plaintiff has demonstrated that other

employees wish to opt in to this action, and notes that Defendants do not contest

Plaintiff's motion for conditional certification on this point.

    In sum, as Plaintiff has satisfied his burden of showing that he and the

putative class members are similarly situated and that others wish to opt in to

the action, the Court finds that conditional certification of this case as a

collective action is warranted under § 216(b).  The Court is cognizant that

certification of collective actions under the FLSA is intended to promote

judicial economy, according to which "[t]he judicial system benefits by

efficient resolution in one proceeding of common issues of law and fact arising

from the same alleged . . . activity."  Barten v. KTK Assocs., No. 8:06-CV-

1574-T-27EAJ, 2007 WL 2176203, at *1 (M.D. Fla. July 26, 2007) (quoting

Hoffman-LaRoche, Inc., 493 U.S. at 170).  Should Defendants move for

decertification following discovery, the Court will revisit the determinations

made in this Order.  Nevertheless, at this stage, the Court will permit Plaintiff to

send notice of opt-in rights to potential members of the class.  Plaintiff's

Motion for Conditional Collective Action Certification [41] is **GRANTED**.

The class shall be defined as follows:

> All persons currently or formerly employed by Advanced Cable
> Contractors, Inc. ("Advanced Cable") as a Cable Technician, in the
> State of Georgia at any time between [three years prior to the
> mailing date of notice][10] and December 23, 2011,[11] whom

---

[10] In light of the Court's denial of Plaintiff's motion to toll the statute of limitations (see Part I, supra), the Court rejects Plaintiff's proposed class definition as including all persons employed as Cable Technicians on or after January 12, 2009–three years prior to the date of filing of the Complaint.  Instead, the relevant date for statute of limitations purposes is three years prior to the mailing date of the Notice approved by the Court in this Order.  See, e.g., Simpkins v. Pulte Home Corp., No. 6:08-CV-130-Orl-19DAB, 2008 WL 3927275, at * 9 n.9 (M.D. Fla. Aug. 21, 2008) (authorizing notice to those employed within last three years from the date of mailing of notice and explaining, "Because the statute of limitations runs until the written opt-in notice is filed with the Court, 29 U.S.C. § 256, it is prudent to calculate the notice period from the latest possible date.").

[11] Defendants contend that notice should not be sent to Cable Technicians hired on or after December 23, 2011 because on that date, Advanced Cable changed its compensation system "from a commission-based system to a production bonus pay method based on a set hourly wage plus overtime."  (Defs.' Resp., Dkt. [44] at 7.)  As Plaintiff does not respond to this argument, the Court will permit notice only to those Cable Technicians employed by Advanced Cable between three years prior to the mailing date of notice and December 23, 2011, the date on which Cable Technicians began receiving overtime compensation.  As Defendants argue, "[A]ny [Cable

39

Defendants failed to pay overtime compensation for all hours
worked in excess of 40 hours in given pay periods, for example,
where Cable Technicians were not adequately paid as a result of
Advanced Cable paying Cable Technicians with "piece-rate"
compensation for cable and internet service and installation
appointments without providing an overtime premium for hours or
appointments worked in excess of 40 hours in given work weeks.

**V.     Plaintiff's Consent Motion to Dismiss with Prejudice Defendant
American Cable, Inc. as a Defendant** [67]

The Court **GRANTS** Plaintiff's Consent Motion to Dismiss with

Prejudice American Cable, Inc. as a Defendant [67].  Accordingly, Defendant

American Cable, Inc. is hereby **DISMISSED with prejudice** from the suit.

**Conclusion**

In accordance with the foregoing, the Court hereby **DENIES** Plaintiff's

Second Motion to Toll the Statute of Limitations as to Putative "Opt-In"

Plaintiffs [22], **DENIES** Plaintiff's First Motion for Conference Pursuant to

Federal Rule of Civil Procedure 16 [25], and **DENIES** Defendants' Motion for

Sanctions and for Limitations on Opposing Counsel's Pre-Certification

---

Technician] whose employment began on or after that date is not similarly situated to
those employed prior to that date, as s/he was never paid under the so-called 'piece-
rate' compensation system Plaintiff alleges to be unlawful."  (Id.)

Communications [39].[12]  The Court **GRANTS** Plaintiff's Motion for

Conditional Collective Action Certification and Issuance of Notice to Putative

Class Members [41], **GRANTS** Defendants' Motion for Leave to File a

Surreply to Plaintiff's Second Motion to Toll the Statute of Limitations as to

Putative "Opt-In" Plaintiffs [45], and **GRANTS** Plaintiff's Consent Motion to

Dismiss with Prejudice Defendant American Cable, Inc. as a Defendant [67].

> The conditionally certified Class shall be defined as follows:
>
> All persons currently or formerly employed by Advanced Cable
> Contractors, Inc. ("Advanced Cable") as a Cable Technician, in the
> State of Georgia at any time between [three years prior to the
> mailing date of notice] and December 23, 2011, whom Defendants
> failed to pay overtime compensation for all hours worked in excess
> of 40 hours in given pay periods, for example, where Cable
> Technicians were not adequately paid as a result of Advanced
> Cable paying Cable Technicians with "piece-rate" compensation
> for cable and internet service and installation appointments without
> providing an overtime premium for hours or appointments worked
> in excess of 40 hours in given work weeks.

Plaintiff submitted a Notice of Court Certification of Collective Action in

Federal Overtime Lawsuit Against Advanced Cable Contractors, American

Cable and Lisa Adcox Meyer [41-2] with his Motion for Conditional Collective

---

[12] However, Opt-in Plaintiffs Chambuso and Sterle must file renewed Consent
Forms as required in Section III.B. hereof to remain in the case.

Action Certification.  Defendants outlined several objections to the proposed

notice in their Response to Plaintiff's Motion for Conditional Collective Action

Certification and Issuance of Notice to Putative Class Members [44].  The

Court has reviewed Plaintiff's submissions and Defendants' objections and

finds that a Notice attached to this Order as Exhibit "A" should be sent to

prospective class members.  Defendants shall provide to Plaintiffs, within seven

(7) days of the entry of this Order, the names, last known addresses, telephone

numbers, dates of birth, and last four digits of the social security numbers of

each person employed by Advanced Cable as a Cable Technician within the

time specified in the Class definition above in electronic format so that Plaintiff

may send notice to them.

       **SO ORDERED**, this  _7th_  day of May, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

42

EXHIBIT "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| WALTER BENNETT, JR., on behalf of himself and all others similarly situated, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:12-CV-00115-RWS |
| v. | : : | |
| ADVANCED CABLE CONTRACTORS, INC., a Georgia Corporation, and LISA ADCOX MEYER, | : : : : : | |
| Defendants. | : | |

### NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN

**TO:**   **ALL PERSONS CURRENTLY OR FORMERLY EMPLOYED BY ADVANCED CABLE CONTRACTORS, INC. ("ADVANCED CABLE") AS A CABLE TECHNICIAN, IN THE STATE OF GEORGIA AT ANY TIME BETWEEN [THREE YEARS PRIOR TO THE MAILING DATE OF NOTICE] AND DECEMBER 23, 2011, WHOM DEFENDANTS FAILED TO PAY OVERTIME COMPENSATION FOR ALL HOURS WORKED IN EXCESS OF 40 HOURS IN GIVEN PAY PERIODS, FOR EXAMPLE, WHERE CABLE TECHNICIANS WERE NOT ADEQUATELY PAID AS A RESULT OF ADVANCED CABLE PAYING CABLE TECHNICIANS WITH "PIECE-RATE" COMPENSATION FOR CABLE AND INTERNET SERVICE AND INSTALLATION APPOINTMENTS WITHOUT PROVIDING AN OVERTIME PREMIUM FOR HOURS OR APPOINTMENTS WORKED IN EXCESS OF 40 HOURS IN GIVEN WORK WEEKS.**

**RE:**   **FAIR LABOR STANDARDS ACT ("FLSA") OVERTIME LAWSUIT AGAINST ADVANCED CABLE AND LISA ADCOX MEYER.**

## INTRODUCTION

The purpose of this Notice is to: (1) inform you that a collective action lawsuit exists that you might join; (2) advise you how your rights may be affected by this lawsuit; and (3) instruct you on the procedure for participating in this lawsuit, if you choose to do so.

## DESCRIPTION OF THE ACTION

In January of this year (2012), Plaintiff filed an action against Defendants Advanced Cable and Lisa Adcox Meyer (collectively referred to as "Defendants") on behalf of himself and all similarly situated persons currently or formerly employed by Advanced Cable as a Cable Technician in Georgia at any time between three years prior to the mailing date of notice and December 23, 2011.

Plaintiff alleges that Defendants failed to pay these individuals overtime compensation for all hours worked in excess of 40 hours in given pay periods, in violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* In particular, Plaintiff alleges that Cable Technicians were not adequately paid as a result of Advanced Cable paying Cable Technicians with "piece-rate" compensation for cable and internet service and installation appointments without providing an overtime premium for hours or appointments worked in excess of 40 hours in given work weeks.

Defendants deny that they have violated the FLSA, or that any overtime pay is owed, and are defending against all claims that have been asserted against them.

The Court has taken no position in this case regarding the merits of Plaintiff's claims or the Defendants' defenses. As such, this Notice does not mean you have a valid claim or are entitled to any monetary recovery. Any such determination must still be made by the Court.

## YOUR RIGHT TO PARTICIPATE IN THIS ACTION

You may join in this lawsuit if you worked as a Cable Technician at Advanced Cable in Georgia between [three years prior to the mailing date of notice] and December 23, 2011.

It is entirely your decision whether to join this lawsuit. You are not required to take any action unless you desire to join. If you fit the definition above for those who may join the lawsuit, you may choose to join this action by mailing or faxing the attached Consent Form to Plaintiff's attorneys:

AO 72A
(Rev.8/82)

Stephen M. Katz, Esq.
V. Severin Roberts, Esq.
The Katz Law Group
4799 Olde Towne Parkway, Suite 200
Marietta, Georgia 30068
Telephone: (770) 988-8181
Facsimile: (770) 988-8182
email: rachel@smk-law.com

The Consent Form must be received by The Katz Law Group on or before [60 days after mailing of this Notice] for you to participate in this case.

## EFFECT OF JOINING OR NOT JOINING THIS ACTION

If you join this action, you will be bound by any ruling, judgment, award, or settlement, whether favorable or unfavorable.  While this lawsuit is proceeding, you may be required to provide information or documents, or otherwise participate in this action.

If you file a Consent Form, your continued right to participate in this action will depend upon a later decision by the Court that you and the named Plaintiffs are "similarly situated" in accordance with applicable laws and that it is appropriate for this case to proceed as a collective action.

If you choose not to join this action, you will not be bound by any ruling, judgment, or settlement entered in this case, favorable or unfavorable.  If you choose not to join this lawsuit, you may file a separate lawsuit on your own or choose to take no action at all.

## STATUTE OF LIMITATIONS

The FLSA has a two to three year statute of limitations, depending upon later decisions by the Court. If you choose to join this action, you may be able to recover damages only for hours worked within two or possibly three years of the date your Consent Form is filed. If you choose not to join in this action or file your own action, some or all of your potential claims may later be barred by the applicable statute of limitations.

## NO RETALIATION PERMITTED

You have an absolute right to join this lawsuit free from any fear that Defendants will retaliate against you in any way.  The law prohibits retaliation against employees for exercising their rights under the FLSA.

## LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this case by filing a Consent Form, your interests will be represented by:

Stephen M. Katz, Esq.
V. Severin Roberts, Esq.
The Katz Law Group
4799 Olde Towne Parkway, Suite 200
Marietta, Georgia 30068
Telephone: (770) 988-8181
Facsimile: (770) 988-8182
email: rachel@smk-law.com

## FURTHER INFORMATION

Further information about this lawsuit or this Notice can be obtained by contacting Plaintiff's counsel at the address or telephone number provided above.

**THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF GEORGIA, HONORABLE JUDGE RICHARD W. STORY.**

## CONSENT FORM

1. I hereby consent to join the lawsuit brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., to recover compensation I may be owed by my current/former employer, Advanced Cable Contractors, Inc. ("Advanced Cable").

2. Between [three years prior to the mailing date of Notice] and December 23, 2011, I worked for Advanced Cable in Georgia as a Cable Technician.  I did not receive overtime compensation for all hours worked in excess of 40 hours in given pay periods.

3. I hereby designate the law firm of The Katz Law Group to represent me in this action.

Date: _____ _____
                                                    Signature

                                   _____
                                                    Print Name
_____
### No Information Included Below Will be Filed With the Court

### PLEASE PRINT OR TYPE THE FOLLOWING INFORMATION:

Name:_____
          (First)                    (Middle)                    (Last)

Street Address:_____

City, State, Zip: _____

Home: _____ Work: _____ Cell: _____

Email: _____ Secondary Email: _____

Social Security Number: _____(or) Date of Birth:_____

Emergency Contact
_____
(In case we lose contact with you)

**FAX OR MAIL TO:**          **Stephen M. Katz, Esq. & V. Severin Roberts, Esq.**
                             **The Katz Law Group**
                             **4799 Olde Towne Parkway, Suite 200, Marietta, GA 30068**
                             **Telephone: (770) 988-8181 Fax: (770) 988-8182**