**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DEREK MOORE, on behalf of       :
himself and others similarly       :
situated,       :
      :
         Plaintiffs,       :       CIVIL ACTION NO.
      :       1:12-CV-00115-RWS
         v.       :
      :
ADVANCED CABLE       :
CONTRACTORS, INC., and LISA       :
ADCOX MEYER,       :
      :
         Defendants.       :

## ORDER

This case comes before the Court on Plaintiffs' Motion for Summary

Judgment [101] and Defendants' Motion for Partial Summary Judgment [136].

After reviewing the record, the Court enters the following Order.

## Background

Defendant Advanced Cable Contractors, Inc. ("Advanced Cable") is a

cable installation and sales contractor located in Marietta, Georgia.  (Dkt. [136-

2] ¶ 1; Dkt. [162-1] ¶ 1.)  Defendant Lisa Adcox Meyer ("Meyer") is the owner

of Advanced Cable and assists in the management and operation of the

company.  (Dkt. [136-2] ¶ 2; Dkt. [162-1] ¶ 2.)  Meyer has been involved in the

cable contractor industry since the mid-1990s, when she engaged in direct sales for Comcast as a sub-contractor of a Comcast contractor called Cable Sales, Inc. (Dkt. [136-2] ¶ 3; Dkt. [162-1] ¶ 3.)  Following her employment with Cable Sales, Meyer started Advanced Cable in approximately 2003-2004.  (Dkt. [136-2] ¶ 4; Dkt. [162-1] ¶ 4.)

Advanced Cable is in the business of selling cable, internet, and telephone installation services to cable companies.  (Dkt. [136-2] ¶ 6; Dkt. [162-1] ¶ 6.)  Advanced Cable's main client is Comcast Cable, for which it installs cable, internet, and phone equipment in customer homes, and sells Comcast products and services directly to the public.  (Dkt. [136-2] ¶ 8; Dkt. [162-1] ¶ 8.)  Since at least January 2009, Advanced Cable's installation work has constituted more than 95% of the company's annual sales revenue.  The remainder of the company's revenue is derived from Advanced Cable's sales-related services.  (Dkt. [136-2] ¶ 9; Dkt. [162-1] ¶ 9.)

Comcast pays Advanced Cable for each billable task its Installation Technicians ("technicians") complete.  Pursuant to a contract between the two parties, Comcast pays Advanced Cable a predetermined amount for completion of each task.  (Dkt. [136-2] ¶ 10; Dkt. [162-1] ¶ 10.)  Comcast then passes on

AO 72A
(Rev.8/82)

the cost of Advanced Cable's work to its customers in the form of cable and
internet bills, which include installation fees.  (Dkt. [136-2] ¶ 11; Dkt. [162-1] ¶
11.)  The manner in which Comcast determines the amount paid for each task is
as follows: Comcast assigns a certain number of units to each billable task.
Each unit is approximately five minutes, so the number of units assigned to
each task corresponds to the total amount of time Comcast estimates should be
needed to complete the task.  Comcast then bases the amount paid for the task
on the number of units assigned to it.  The higher the number of units assigned
to a task, the higher the compensation for its completion.  (Dkt. [136-2] ¶ 12;
Dkt. [162-1] ¶ 12.)

Prior to December 23, 2011, Advanced Cable compensated its
technicians via a commission-based pay system developed by Meyer.  (Dkt.
[136-2] ¶ 15; Dkt. [162-1] ¶ 15.)  Under this system, technicians were paid
based on the number and type of job tasks they performed each week.  (Dkt.
[136-2] ¶ 16; Dkt. [162-1] ¶ 16.)  Technicians were paid a predetermined
amount per task completed, and the amount paid varied based on the type of
task.  (Dkt. [136-2] ¶ 17; Dkt. [162-1] ¶ 17.)  Technicians received the same
amount for completion of each task regardless of the amount of time it took to

AO 72A
(Rev.8/82)

complete it.  (Dkt. [136-2] ¶ 19; Dkt. [162-1] ¶ 19.)  The rates set by Advanced

Cable were not based on the amount Comcast paid for the work.  (Dkt. [136-2]

¶ 21; Dkt. [162-1] ¶ 21.)  Thus, the amount paid to technicians did not vary with

the amount charged to Comcast, and vice versa.  (Dkt. [136-2] ¶ 22; Dkt. [162-

1] ¶ 22.)  Instead, Advanced Cable based the rates set for each task on several

factors designed to encourage technicians to work efficiently and productively

and increase the company's revenues.[1]  (Dkt. [136-2] ¶ 23; Dkt. [162-1] ¶ 23.)

Plaintiff Derek Moore and the opt-in Plaintiffs (Joshua Sterle, Patrick

Thompson, Joseph Murchison, Monty Dannenberg, Jesse Dimiceli, Matthew

Mayers, Raymond Canty, Jesse Peterson, Luther DeLoach, Ivan Carroll,

Florencio Grasetti, Danny Matos, Leonardo Penn, Rowan Dublin, Lamar

Weeks, and Derek Hall) ("the Plaintiffs") worked for Advanced Cable for

varying periods of time between 2009 and 2011 as technicians.  (Dkt. [136-2] ¶

13; Dkt. [162-1] ¶ 13.)  As technicians, Plaintiffs installed cable, internet, and

---

[1] Such factors included "anticipated demand from Comcast customers for a
particular service[,]" (Dkt. [136-2] ¶ 24; Dkt. [162-1] ¶ 24) "the level of installation
difficulty[,]" (Dkt. [136-2] ¶ 25; Dkt. [162-1] ¶ 25) "the importance of the task to
overall job quality and, ultimately, Advanced Cable's revenue[,]" (Dkt. [136-2] ¶ 26;
Dkt. [162-1] ¶ 26) and "the frequency with which each task occurred[.]" (Dkt. [136-2]
¶ 31; Dkt. [162-1] ¶ 31.)

AO 72A
(Rev.8/82)

phone equipment in Comcast customers' homes.  (Dkt. [136-2] ¶ 14; Dkt. [162-1] ¶ 14.)

Plaintiffs initiated the instant litigation on January 12, 2012, by filing a Complaint [1] with the United States District Court for the Northern District of Georgia.  Plaintiffs subsequently filed an Amended Complaint [7] on January 17, 2012.  Plaintiffs' Amended Complaint asserts claims against Defendants for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") (Count I) and for failure to keep and preserve adequate and accurate employment records as required by the FLSA (Count II).  (See generally Pls.' Am. Compl., Dkt. [7].)

Plaintiffs now move the Court for an order granting them summary judgment on all elements of their claims.  Additionally, Defendants now move for partial summary judgment in their favor that their payment scheme is a commission-based system, which is an element of their affirmative defense that Plaintiffs are exempt from overtime compensation as provided by FLSA § 7(i), 29 U.S.C. § 207(i).

After reviewing the record, it appears that the following facts are disputed: (1) the amount of time per week each Plaintiff worked, (2) the average

5

hourly rate at which each Plaintiff was paid based on that work, (3) whether

Defendants' payment scheme was "commission-based," and (4) whether

Defendants wilfully violated the FLSA.

## Discussion

### I.      Legal Standard

Federal Rule of Civil Procedure ("Rule") 56 requires that summary

judgment be granted "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of

informing the . . . court of the basis for its motion, and identifying those

portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v.

N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the

moving party makes such a showing, the burden shifts to the non-movant, who

must go beyond the pleadings and present affirmative evidence to show that a

AO 72A
(Rev.8/82)

genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

7

its burden under Rule 56(c), the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.   Analysis

### A.   Count I

Plaintiffs assert a claim against Defendants for unpaid overtime compensation and liquidated damages as a result of Defendants alleged violation of the FLSA, 29 U.S.C. § 201 et seq.  (Pls.' Am. Compl., Dkt. [7] ¶ 1.) In order to prevail on a claim for unpaid overtime compensation, "a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work."  Allen v. Board of Pub. Educ. for Bibb County, 495 F.3d 1306, 1314-15 (11th Cir. 2007).  Plaintiffs allege they worked in excess of forty hours per week during the relevant time period as employees of Defendants without receiving overtime compensation as required by the FLSA.  (Pls.' Am. Compl., Dkt. [7] ¶ 30.)  Defendants have asserted the affirmative defense that Plaintiffs are employees exempt from overtime compensation under 29 U.S.C. § 207(i), which states:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein (40 hours), if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

Defendants assert, and Plaintiffs do not dispute, that Advanced Cable is a retail and service establishment for the purposes of the FLSA.[2]  Therefore, for Defendants to prevail on their affirmative defense, they must show that Plaintiffs were paid in excess of one and one-half times the minimum hourly rate ($10.875) and that they were paid according to a commission-based compensation scheme.

Plaintiffs have moved for summary judgment on all of their claims. Defendants have moved for partial summary judgment, pertaining solely to

---

[2] See also Owopetu v. Nationwide CATV Auditing Servs., Inc., 2011 WL 883703 (D. Vt. Mar. 11, 2011) and Owopetu v. Nationwide CATV Auditing Servs., Inc., 2011 WL 4433159 (D. Vt. Sept. 21, 2011) (finding that employer conducting almost identical activities as Defendants, namely installing and maintaining telecommunications hardware in customers' homes for a service provider, was a "retail and service establishment" for the purposes of an FLSA exemption.); Gruchy v. DirectTech Del., Inc., 2010 WL 3835007 (D. Mass. Sept. 30, 2010) (holding the same for an employer who performed similar services for a satellite television provider.).

9

whether their payment scheme is a commission-based system.  The Court will now address the motions on the merits.

i.    <u>Plaintiffs' Motion for Summary Judgment [101]</u>

First, both parties have submitted fairly extensive evidence in attempts to show the amount of time Plaintiffs worked, as well as what they were paid over that time, in order to produce an average wage rate.  Plaintiffs argue that Defendants' record-keeping practices created falsehoods and discrepancies in regard to the amount of time Plaintiffs worked, and therefore the wage rate at which they were paid.  Defendants respond that Plaintiffs' estimations of the hours they worked are grossly inflated, and as such should be disregarded by the Court.  The Court disagrees with Defendants' request to disregard Plaintiffs' estimates but also declines to take Plaintiffs' estimates at face value.  The contradictory evidence introduced by both parties clearly shows that both the amount of time Plaintiffs worked and the rate at which they were compensated are disputed material facts.  There being a genuine issue of material fact regarding an essential element of Defendants' affirmative defense, a grant of summary judgment in favor of Plaintiffs would be inappropriate.  Accordingly,

10

Plaintiffs' Motion for Summary Judgment [101], to the extent it covers Count I, is due to be **DENIED**.

ii.     Defendants' Motion for Partial Summary Judgment [136]

Second,  Plaintiffs argue that if a compensation scheme lacks proportionality, that is, if the amount an employee is paid is not directly correlated with the amount the employer charges for that good or service, then a compensation scheme cannot be deemed "commission-based" as a matter of law.  The Court disagrees with Plaintiffs' contention.

While the Court notes that employers bear the burden of proof in showing they are "plainly and unmistakably within the terms and spirit of the exemption" and that evidence on such an issue is to be construed liberally in the employee's favor, the Court finds that Defendants did in fact meet their burden of proof on this element.  Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008); see generally Morgan v. Family Dollar Stores, 551 F.3d 1233 (11th Cir. 2008).  The Eleventh Circuit has previously deemed an employer with a compensation scheme substantially similar to that of Defendants to fall under the "commission" exemption to overtime created by

11

29 U.S.C. § 207(i).  In <u>Klinedinst v. Swift Invs., Inc.</u>, the defendant employer paid his employees, automobile painters, on the basis of "flagged hours," which essentially assigned a certain time value to the painting of a certain portion of an automobile.  260 F.3d 1251, 1253 (11th Cir. 2001).  Employees were paid based on the amount of "flagged hours" of tasks they had completed multiplied by their hourly rate, which was set by the employer based on their experience and skill level.  <u>Id.</u>  Employees were paid for the entire "flagged hour" time value, regardless of how long it took them to complete the given task.  <u>Id.</u>  The Court of Appeals reasoned that the flat rate payment plan qualified as a commission-based payment system as a matter of law because it incentivized employees to work efficiently, which allowed the employer to take on more customers, which in turn allowed employees the opportunity to make more money.  <u>Id.</u> at 1256.  The Court stated "[t]he function of a commission exemption as embodied by section 7(i) is to ensure that workers who are paid on a commission basis are guaranteed to receive at least the legislated minimum wage without requiring them to work overtime for it."  <u>Id.</u>

Plaintiffs' own deposition testimony states that there were ample opportunities for technicians to get additional work if they completed their

12

scheduled appointments ahead of time and that technicians were paid extra if they sold customers upgraded service packages or hardware not on their scheduled work-orders.  This is clearly an incentive-based system, and while Plaintiffs argue that because each installation took a set amount of time there was no "incentive to hustle," the same can be said for painting automobiles. Like the employer in <u>Klinedinst</u>, which paid its automobile painters on a wage scale determined by their skill and experience, Defendants' compensation rates for technicians "varied based on the skill and experience of each Tech, such that the more skilled and experienced Techs were paid more per task than less skilled and experienced Techs."  (Dkt. [136-2] ¶ 18; <u>see</u> Dkt. [138] ¶ 18.[3])

The facts of <u>Klinedinst</u> and the case at bar are significantly similar, and as such, the Court cannot agree with Plaintiffs' assertion that <u>Klinedinst</u> is inapplicable to the case at bar.  Proportionality between employees' wages and employers' gains is an important part of a commission-based compensation system, but to say that any compensation system which does not pay an employee a direct percentage of their employer's gain is not a commission-

_____

[3]Plaintiffs deny this statement of fact by Defendants, but their subsequent explanation in no way relates to said statement of fact.  This fact is considered undisputed.

13

based system is too narrow of a construction.  The incentive of being paid a flat

rate for work regardless of how long it takes presumably increases efficiency,

which would increase the number of customers the employer can serve.  This in

turn increases the amount of work available to employees, so their prospective

potential earnings are still proportional, although not as an exact percentage, to

their employers' potential earnings.  In accordance with the finding that

Defendants' compensation scheme was commission-based, the Court finds

Defendants' Motion for Partial Summary Judgment [136] is due to be

**GRANTED**.

        B.     <u>Count II</u>

Plaintiffs allege in Count II that Defendants "fail[ed] to make, keep, and

preserve adequate and accurate records of the persons employed and of the

wages, hours, and other conditions and practices of employment maintained by

them[]" in violation of provisions of §§ 11(c) and 15(a)(5) of the FLSA, 29

U.S.C. §§ 211(c) and 215(a)(5), and the Department of Labor regulations at 29

C.F.R. § 516.  (Pls.' Am. Compl., Dkt. [7] ¶ 36.)

Under the FLSA, an employer is required to "make, keep, and preserve

such records of the persons employed by him and of the wages, hours, and other

14

conditions and practices of employment maintained by him, and shall preserve

such records for such periods of time[.]"  29 U.S.C. § 211(c).  Plaintiffs allege

that Defendants' records: (1) fail to identify and include the time Plaintiffs

spent working at Defendants' warehouse at the beginning of each work day

(Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' Mem."), Dkt. [101-1]

at 4 of 32), (2) fail to identify a stop-time for Plaintiffs' last appointment on

specific work days (id. at 5 of 32), (3) fail to show a start or stop time for

appointments on given work days (id.), (4) fail to include the time Plaintiffs

spent working at customers' homes on their last appointment of given work

days after closing out customers' work orders (id. at 5-6 of 32), and (5) fail to

include time that numerous installers spent working at home after their last

appointments preparing reports.  (Id. at 6 of 32.)  Plaintiffs also allege that

Defendants, or agents of Defendants, instructed opt-in Plaintiff Monty

Dannenberg to alter technicians' time records, which was a willful violation of

the FLSA.  (Id. at 11-13 of 32.)

Defendants respond by explaining, point by point, why each of the

alleged inaccuracies did not compromise the accuracy of their recording system

as a whole.  As to Plaintiffs' first contention, Defendants, citing Plaintiffs' own

AO 72A
(Rev.8/82)

deposition testimony, state that the actual time spent at the warehouse was significantly lower than estimated by Plaintiffs.  (Defs.' Resp. to Pls.' Mot. for Summ. J. ("Defs.' Resp."), Dkt. [138] at 15 of 23.)  As to Plaintiffs' second and fourth contentions, Defendants state that Plaintiffs were not allowed to close out a work order until completing the work at that customer's home.  (Id.)  As to Plaintiffs' third contention, Defendants state that non-existent stop or start times are a result of cancelled or rescheduled appointments.  (Id. at 14 of 23.)  As to Plaintiffs' fifth contention, Defendants state, citing Plaintiffs' own deposition testimony, that Plaintiffs' estimation of the amount of time spent preparing reports was significantly higher than the actual time spent on them.  (Id.)  Finally, as to Plaintiffs' allegations concerning the alteration of employment records, Defendants state that during his deposition testimony, Monty Dannenberg directly contradicted his prior statements about being instructed to, and in fact his ability to, alter the employee time records.  (Id. at 20 of 23.)

It is clear that there are disputed issues of material fact as to Count II, mainly regarding the effect, if any, of the alleged discrepancies and omissions in Defendants' time records on the overall adequacy and accuracy of Defendants' recording-keeping system.  These facts must be submitted to a

16

jury.  Subject to a finding of liability, a jury must also determine whether Defendants wilfully violated the FLSA.  As such, the Court finds Plaintiffs' Motion for Summary Judgment [101], to the extent it covers Count II, is due to be **DENIED**.

## Conclusion

Based on the foregoing, Plaintiffs' Motion for Summary Judgment [101] is **DENIED**, and Defendants' Motion for Partial Summary Judgment [136] is **GRANTED**.  The parties are **ORDERED** to submit a consolidated proposed pretrial order to the Court within thirty (30) days of the docketing of this Order.

**SO ORDERED**, this __1st__ day of August, 2013.


_____

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

17